UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOLLENA M.,[1]

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

DECISION & ORDER

21-CV-1137MWP

**PRELIMINARY STATEMENT**

  Plaintiff Dollena M. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Income Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 11).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 9). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

I.  **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2019, the amended alleged onset date. (Tr. 13).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: morbid obesity, non-ischemic tachycardia-mediated cardiomyopathy, atrial fibrillation, atrial flutter, congestive heart failure, and cardiomyopathy (*Id.*). The ALJ also found that plaintiff had been diagnosed with several physical impairments including Graves' disease, hypothyroidism, peroneal tendinitis, chronic back pain, unequal limb length, vitamin D deficiency, and obstructive sleep apnea, but that these impairments were nonsevere. (Tr. 13-14).

With respect to plaintiff's mental impairments, the ALJ determined that plaintiff had the medically determinable impairments of adjustment disorder with mixed anxiety and depressed mood, and unspecified trauma and stressor-related disorder, but she concluded that these impairments were nonsevere because they did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities. (Tr. 14-15). In reaching this conclusion, the ALJ considered the four broad categories of mental functioning and found that

---

[2] The administrative transcripts (Docket ## 6, 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

plaintiff's mental impairments caused no limitation in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Tr. 14-16). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 16).

The ALJ concluded that plaintiff retained the RFC to perform sedentary work but with certain limitations. (*Id.*). Specifically, the ALJ found that plaintiff could only occasionally stoop, crouch, and climb ramps and stairs and could never kneel, crawl, or climb ladders, ropes, and scaffolds. (*Id.*). Additionally, plaintiff could frequently operate foot controls with her right foot and could only occasionally be exposed to dangerous moving machinery and unprotected heights. (*Id.*). At steps four and five, the ALJ determined that plaintiff was unable to perform her past relevant work, but given her age, education, work experience and RFC, other jobs existed in significant numbers in the national economy that plaintiff could perform, such as document preparer, addressing clerk, and callout operator. (Tr. 20-21). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 21-22).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 8-1). Specifically, plaintiff maintains that the ALJ erroneously found that she did not have a severe mental impairment at step two of the sequential analysis and that this error was not harmless because the ALJ failed to consider the effects of her mental impairments in formulating her RFC. (*Id.* at 9-17). The ALJ further erred, according to plaintiff, by rejecting the only medical opinion of

record evaluating plaintiff's mental impairments and by failing to develop the record by obtaining a medical opinion evaluating plaintiff's mental functional capacity. (*Id.* at 17-19).

IV. <u>Analysis</u>

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). The claimant bears the burden to present evidence demonstrating severity at step two. *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted by*, 2011 WL 2669463 (N.D.N.Y. 2011). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (citation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, where the claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique." *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a(b)-(e). Specifically, the ALJ must rate the claimant's "degree of functional limitation resulting from" a medically determinable mental impairment in "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and, (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)-(c); *see*

also *Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (discussing former version of 20 C.F.R. § 404.1520a(c)(3)). "If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document [her] analysis, and [her] written decision must reflect application of the technique, and include a specific finding as to the degree of limitation in each of the four functional areas." *Lynn v. Colvin*, 2017 WL 743731 at *2 (alterations and quotations omitted).

Here, the ALJ recognized at step two that plaintiff's mental impairments were medically determinable, but found that the conditions were not severe because they "d[id] not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities." (Tr. 14). Applying the "special technique," the ALJ explained that plaintiff had no limitations in each of the four broad categories of mental functioning outlined above. (Tr. 14-15). In reaching this conclusion, the ALJ discussed the treatment notes from plaintiff's mental health treatment appointments, which, according to the ALJ, were "rather benign" and demonstrated that plaintiff's mental status was generally within normal limits. (*Id.* (citing Tr. 1895-931)). The ALJ also considered the results of a physical consultative evaluation, which the ALJ described as demonstrating that plaintiff's remote memory was intact because she was able to report "adequate details about her past personal and medical history." (*Id.* (citing Tr. 983-86)). The ALJ further supported her step-two analysis by discussing plaintiff's self-reported abilities contained in the Adult Function Report she completed in connection with her application for benefits. (*Id.* (citing Tr. 272-81)).

The ALJ also considered an opinion submitted by plaintiff's mental health counselor, Stephanie Massara-Polyachenko. (Tr. 14 (citing Tr. 2000-2004)). In that opinion, dated September 10, 2020, Massara-Polyachenko reported that plaintiff had been linked with

mental health treatment since March 12, 2020, and was receiving weekly individual counseling sessions.  (Tr. 2000-2004).  According to Massara-Polyachenko, plaintiff suffered from major depressive disorder, recurrent, moderate and unspecified trauma, and stressor-related disorder.  (*Id.*).  Massara-Polyachenko explained that plaintiff's symptoms included extreme fatigue, loss of interest, and difficulty with concentration and focus.  (*Id.*).  She also indicated that plaintiff reported experiencing hopelessness and decreased motivation.  (*Id.*).

Massara-Polyachenko indicated that because she had only observed plaintiff in a clinical setting, she was unable to assess plaintiff's work-related capabilities.  (*Id.*).  She nonetheless opined that plaintiff would be absent from work more than four days per month and that her chronic medical conditions impacted her mood, which, in combination with her mental symptoms, "become[s] debilitating" for plaintiff.  (*Id.*).  The ALJ determined that this opinion was not persuasive, finding no objective findings in the treatment notes to support Massara-Polyachenko's opinion regarding plaintiff's absenteeism.  (Tr. 14).  She also found that the evidence of record, including evidence suggesting that plaintiff was able to care for herself and her children, was inconsistent with the opinion.  (*Id.*).

After evaluating this evidence, the ALJ determined that plaintiff's medically determinable mental impairments caused "no more than mild limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities."  (Tr. 15).  Accordingly, the ALJ found plaintiff's mental impairments to be nonsevere.  (*Id.* (citation omitted)).

The ALJ concluded her step-two analysis by stating that the "limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (*Id.*).  She

8

observed that "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" and that her RFC "assessment reflects the degree of limitation [she] . . . found in the 'paragraph B' mental function analysis." (*Id.*).

As stated above, plaintiff argues that the ALJ's step-two severity determination concerning her mental health impairments was not supported by substantial evidence. (Docket # 8-1 at 9-17). The Commissioner counters that the ALJ's step-two finding was supported by substantial evidence in the record and that plaintiff relies on a "select few specific findings on mental status examinations" in support of her argument. (Docket # 9-1 at 15-16). I do not reach this particular challenge because the other issue raised by plaintiff – that the ALJ failed to analyze the effect of plaintiff's mental health impairments in determining her RFC – warrants remand.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184 at *2). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).

In addition, regardless of whether an impairment qualifies as severe or nonsevere at step two, an ALJ still must consider the impact of all of a claimant's medically determinable impairments in assessing the RFC. *See* 20 C.F.R. § 404.1545(a)(2) ("[the Commissioner] will consider all of [a claimant's] medically determinable impairments of which [the Commissioner] [is] aware, including [a claimant's] medically determinable impairments that are not 'severe' . . .

when [the Commissioner] assess[es] [a claimant's] [RFC]"); *see also Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("[an] RFC determination must account for limitations imposed by both severe and nonsevere impairments"); *Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, *5 (W.D.N.Y. 2021) ("[r]egulations and case law are clear that an RFC determination must account for limitations imposed by both [severe] and non-severe impairments"); *Laura Anne H. v. Saul*, 2021 WL 4440345, *9 (N.D.N.Y. 2021) ("[i]t is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC") (citation omitted). As a result, "[a]n error at step two – either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe – can be harmless error if the ALJ continues the analysis and considers all impairments in his RFC determination." *Pacholski v. Berryhill*, 2018 WL 3853388, *3 (W.D.N.Y. 2018) (brackets and citation omitted); *see also Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265 at *4 ("[a]n error at step two may be harmless if the ALJ identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process, *and specifically considers* the 'non-severe impairment' during the subsequent steps of the process") (emphasis supplied). However, where "the ALJ fails to account for the claimant's nonsevere impairments when determining [the claimant's] RFC[,] . . . [r]emand is required." *Pacholski v. Berryhill*, 2018 WL 3853388 at *3; *see also Schmidt v. Colvin*, 2016 WL 4435218, *13 (E.D.N.Y. 2016) ("[w]here an ALJ fails to account for any functional limitations associated with the non-severe impairments in determining the claimant's RFC, a court must remand for further administrative proceedings") (brackets and quotations omitted).

Even if the ALJ's step-two severity determination were supported by substantial evidence – a determination I do not reach – I find that the ALJ still committed error by failing to

account for or even address any functional limitations associated with plaintiff's mental impairments in the RFC assessment. The ALJ's RFC analysis did not discuss or evaluate the extent to which plaintiff's mental impairments affected plaintiff's "ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," *Melville v. Apfel*, 198 F.3d at 52, and the RFC likewise did not contain any nonexertional, mental limitations associated with that impairment. (*See generally* Tr. 16-20). Indeed, in summarizing plaintiff's testimony in connection with her RFC analysis, the ALJ omitted any testimony concerning plaintiff's mental health symptoms. (Tr. 18). The ALJ's failure to evaluate plaintiff's mental health impairments in formulating her RFC constitutes error because the ALJ found plaintiff's mental impairments to be nonsevere medically determinable impairments and was therefore required to consider the impairments in the RFC analysis.[3] *See* 20 C.F.R. § 404.1545(a)(2).

        Moreover, the ALJ did not satisfy this requirement through application of the "special technique" at step two. Although the ALJ discussed evidence relevant to plaintiff's mental impairments at that stage of the sequential process, including treatment notes and the opinion of plaintiff's mental health provider, and found that this evidence demonstrated that plaintiff's mental impairments were nonsevere (*see* Tr. 14-15), it is well-established that the step-two analysis is "analytically distinct" from the RFC analysis, and an ALJ's discussion of

---

[3] The Commissioner cites *Dianne L. S. v. Comm'r of Soc. Sec.*, 2021 WL 1169180 (W.D.N.Y. 2021), and *Sirris v. Comm'r of Soc. Sec.*, 2020 WL 5105110 (W.D.N.Y. 2020), in support of the contention that the failure to discuss medically determinable mental impairments after step two does not necessarily warrant remand; however, those cases are inapposite. In *Sirris*, the ALJ explicitly discussed plaintiff's nonsevere impairments in the RFC analysis. *See Sirris v. Comm'r of Soc. Sec.*, 2020 WL 5105110 at *9 ("the administrative decision demonstrates that the ALJ considered plaintiff's partial left finger amputation in the RFC analysis, and ultimately determined that it did not warrant any additional limitations[;] [i]n formulating the RFC, the ALJ discussed plaintiff's testimony and daily activities, as well as the consultative examinations . . . with respect to [plaintiff's] left hand injury"). Similarly, in *Dianne L. S.*, "in conducting his RFC analysis, the ALJ explicitly considered [p]laintiff's depression when he referred to [p]laintiff's hearing testimony about 'severe depression,' discussed the lack of any emergency treatment or hospitalizations for depression in the record, and the positive effect that [p]laintiff's medication had on her ability to control her psychiatric symptoms." *See Dianne L. S. v. Comm'r of Soc. Sec.*, 2021 WL 1169180 at *5. As noted above, in this case, the ALJ failed entirely to discuss or address plaintiff's mental health impairments in formulating the RFC.

evidence and functional limitations relating to plaintiff's mental impairments at step two does not relieve her of the obligation to further assess plaintiff's mental health impairments in the RFC portion of her decision. *Golden v. Colvin*, 2013 WL 5278743, *3-4 (N.D.N.Y. 2013) (ALJ erred where his decision "d[id] not reflect that he engaged in *any* further assessment of functional effects of [claimant's] mental impairments beyond determinations previously made at [s]teps 2 and 3 under the 'special technique'"; while the "special technique" applied at steps two and three may "relate[] to" the ALJ's mental RFC analysis, it is "entirely separate and analytically distinct from[] a *subsequent* determination of mental *residual functional capacity*[;] [s]tep 2 and [s]tep 3 findings regarding functional limitations stemming from mental impairments, while pertinent, do not suffice as a mental residual functional capacity determination") (emphasis in original); *see also Sandra J. v. Comm'r of Soc. Sec.*, 2023 WL 3734289, *5 (W.D.N.Y. 2023) ("[t]he ALJ's analysis of the Paragraph B criteria at step two is no substitute for his express consideration of limitations arising from [p]laintiff's mental impairments in connection with the RFC determination"); *Jatava L.*, 2021 WL 4452265 at *5 n.4 (rejecting argument that the ALJ "properly evaluated plaintiff's anxiety and depression by following the special technique for evaluating mental impairments at step two of the regulations[;] [t]o the contrary, the Social Security Regulations stress that the 'special technique' . . . is not an RFC assessment, and further, the mental RFC assessment used at steps four and five 'requires a more detai[led] assessment'") (citations omitted); *Cintron v. Berryhill*, 2018 WL 1229731, *10 (S.D.N.Y. 2018) ("[a]t step two, the ALJ found that [claimant's] mental conditions were nonsevere[;] . . . [h]owever, it is not clear from the ALJ's analysis that she separately considered [evidence discussed at step two relating to claimant's mental impairments] in determining [claimant's] RFC, as she was required to do[;] . . . [i]nstead, the ALJ's analysis

seems to commingle the step two determination of severity with the determination of [claimant's] RFC[;] . . . [t]hus, the [c]ourt cannot determine whether her determination of [claimant's] RFC was proper").

I disagree with the Commissioner that the fact that the ALJ may have been aware of this distinction otherwise cures her flawed RFC assessment.  (*See* Docket # 9-1 at 18-19; Tr. 15 (ALJ observed at step two that application of the "special technique" was "not a[n] [RFC] assessment" and that her RFC "assessment reflect[ed] the degree of limitation [she] . . . found in the [step-two] 'paragraph B' mental function analysis")).  Indeed, the RFC portion of the ALJ's decision contains no discussion regarding whether plaintiff's mental impairments caused functional limitations in the work setting, suggesting that the ALJ's statement at step two amounted to recitation of boilerplate language.  *See*, *e.g.*, *Mandy C. v. Saul*, 2020 WL 1245348, *6 (N.D.N.Y. 2020) ("given the absence of any mental restrictions or limitations in the RFC, the ALJ's reference to the proper standard set forth in the regulations, without more, is insufficient lip service and indicates the ALJ simply relied on his finding of non-severity as a substitute for a proper RFC analysis") (brackets and quotations omitted); *Davis v. Saul*, 2019 WL 6682159, *4 (W.D.N.Y. 2019) ("other than baldly asserting that [claimant's] RFC 'reflects the degree of limitation [the ALJ] found in the . . . mental function analysis,' the ALJ never made that 'more detailed assessment' [in the RFC analysis] – at least not in a way that permits review by this [c]ourt") (citation omitted); *Zochios v. Berryhill*, 2018 WL 1835451, *4 (W.D.N.Y. 2018) ("[r]egardless of whether the ALJ properly classified [claimant's] mental impairments as nonsevere, remand is required because he did not consider those nonsevere impairments when assessing her RFC[;] . . . [t]he ALJ's step two conclusion includes boilerplate language indicating that the RFC assessment 'reflects the degree of limitation [he] found in the . . . mental

function analysis,' however, the ALJ's RFC analysis does not mention [claimant's] anxiety or bipolar disorders and the RFC determination lacks any related mental limitations").

In addition, I cannot characterize as harmless the ALJ's error in the RFC analysis of failing to address plaintiff's mental impairments or determine whether they would give rise to associated work-related limitations, particularly where, as here, the ALJ rejected the only opinion evidence in the record addressing plaintiff's mental impairments. While the "[c]ourt is cognizant that where the record reflects only minor impairments, the ALJ may, in [her] discretion, assess an RFC in the absence of opinion evidence, . . . the leeway given to ALJs to make common sense judgments does not typically extend to the determination of mental limitations, which are by their very nature highly complex and individualized." *Louis C. v. Comm'r of Soc. Sec.*, 2024 WL 805634, *6 (W.D.N.Y. 2024) (internal quotations omitted). I agree with plaintiff that the record regarding her mental impairments is not well-developed, and on remand the ALJ should consider whether a mental consultative evaluation is warranted.

In sum, regardless of whether the ALJ's step-two severity determination regarding plaintiff's mental impairments was supported by substantial evidence, the record does not demonstrate that the ALJ properly considered the impact of those impairments in evaluating plaintiff's RFC, as she was required to do.[4] This error requires remand.[5] *See, e.g., Parker-Grose*

---

[4] Of course, the ALJ need not necessarily find on remand that plaintiff has functional work-related limitations associated with her mental impairments, but must specifically discuss any such findings (or lack thereof) in her RFC assessment. *See, e.g., Laura Anne H.*, 2021 WL 4440345 at *11 ("[o]n remand, the ALJ should consider all of [p]laintiff's impairments in the RFC determination regardless of their severity[;] [t]he ALJ may find that [p]laintiff's mental impairments are inconsequential and, thus, reject the need to incorporate mental limitations into the RFC – but he must explain his reasoning for doing so[;] [t]he ALJ should continue through steps four and five of the sequential evaluation as necessary and determine whether [p]laintiff has the RFC to perform the requirements of her past relevant work or any other work").

[5] The Court is unaware of any legal authority excusing the obligation to consider the impact caused by a nonsevere medically determinable mental health impairment in the RFC analysis simply because, as here, the ALJ's step-two determination concluded that the mental impairment causes no limitation in each of the four broad categories of mental functioning. Although the Commissioner cites *Gage v. Comm'r of Soc. Sec.*, 2020 WL

*v. Astrue*, 462 F. App'x at 18 ("even if this [c]ourt concluded that substantial evidence supports the ALJ's finding that [claimant's] mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [for claimant's] mental limitations when determining her RFC[;] . . . [i]n this case, after finding that [claimant's] depression was nonsevere,] . . . the ALJ determined [claimant's] RFC without accounting for any of the limitations arising from her mental impairment that were established by substantial evidence in the record[;] [t]hus, the ALJ committed legal error"); *Louis C.*, 2024 WL 805634 at *6 ("[a]t a minimum, the ALJ's reasoning as to why he did not include any mental limitations in the RFC should have been stated in his decision"); *MacDonald v. Comm'r of Soc. Sec.*, 2019 WL 3067275, *4 (W.D.N.Y. 2019) ("[i]f [claimant's] RFC had included some limitations reflecting the [nonsevere] mild mental impairments that the [ALJ] found at step two, this [c]ourt might conclude that any error [at step two] was harmless[;] [b]ut because her RFC includes no mental restrictions or limitations whatsoever[,] . . . this [c]ourt cannot be certain that the ALJ actually considered her mental issues when addressing her RFC[;] [t]herefore, even if substantial evidence supports the ALJ's determination that [claimant's] mental impairment was not severe at

---

1445261 (W.D.N.Y. 2020), the ALJ there determined at step two that the mental impairment was not medically determinable.  That determination distinguishes *Gage* from this case because limitations caused by impairments that are not medically determinable need not be considered in formulating the RFC.  *See Penny M. v. Kijakazi*, 2022 WL 3997745, *6 (N.D.N.Y. 2022); *Penny Lou S. v. Comm'r of Soc. Sec.*, 2019 WL 5078603, *8 (D. Vt. 2019) ("once the ALJ found the impairment to be not medically determinable, he was not required to consider it in determination [p]laintiff's RFC").

　　　　Moreover, this is not a case in which the record lacks a mental diagnosis made by a medical source or where the plaintiff did not have a history of mental health treatment.  To the contrary, plaintiff's medical records demonstrate that she sought mental health treatment after suffering several recent deaths in her family, including the traumatic murder of her cousin in her front yard, and receiving multiple physical health diagnoses; indeed, she was prescribed medication by her primary care physician to address her mental health symptoms.  (Tr. 1895, 1902).  During her treatment appointments, although she was alert and oriented with normal speech and memory, she was variously described as sad, dysphoric, guarded, and displaying a flat affect.  (Tr. 1909, 1920).  As noted above, she was diagnosed to suffer from adjustment disorder, with mixed anxiety and depressed mood, and unspecified trauma and stressor-related disorder.  (Tr. 1919).  Plaintiff testified that her mental impairments caused her to suffer from several symptoms, including panic attacks, difficulty managing stress, and lack of motivation.  (Tr. 52-55).

step two, remand is still necessary for further consideration because the ALJ failed to account [for claimant's] mental limitations when determining her RFC") (quotations omitted); *Pacholski*, 2018 WL 3853388 at *3 ("[r]egardless of whether the ALJ properly classified these impairments as nonsevere, remand is required because he did not consider them when assessing [claimant's] RFC").

Because I find that remand is warranted due to the ALJ's erroneous consideration of plaintiff's mental impairment in the RFC assessment, I decline to address plaintiff's remaining contentions. *See*, *e.g.*, *Zochios v. Berryhill*, 2018 WL 1835451 at *3 n.3 ("[plaintiff] advances another argument that she believes requires reversal of the Commissioner's decision[;] . . . [h]owever, because the [c]ourt disposes of this matter based on the ALJ's failure to properly consider her nonsevere impairments in the RFC analysis, that argument need not be reached"). That said, I urge the ALJ on remand to consider whether further development of the record concerning plaintiff's mental impairments, including a consultative evaluation, is warranted.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                    *s/Marian W. Payson*
                                                   MARIAN W. PAYSON
                                             United States Magistrate Judge

Dated:  Rochester, New York
          March 6, 2024